IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **DIANA GIBSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:12-cv-761-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Diana Gibson ("Gibson") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

**I.  Procedural History**

Gibson filed her application for Title II disability insurance benefits and

Title XVI Supplemental Security Income on January 22, 2009, alleging a disability onset date of December 31, 2008, due to nerve damage in her hands. (R. 107-118, 138). After the SSA denied her applications, Gibson requested a hearing. (R. 88-92, 95). At the hearing on May 17, 2010, Gibson was 40 years old with an eleventh grade education, and her past relevant work included house cleaning and car detailing. (R. 133, 139, 143, 72). Gibson has not engaged in substantial gainful activity since December 31, 2008. (R. 138).

The ALJ denied Gibson's claims, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 34-48, 1-6). Gibson then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Gibson met the insured status requirements of the Act through December 31, 2012.  (R. 39).  Moving to the first Step, the ALJ found that Gibson had not engaged in substantial gainful activity since December 31, 2008, the alleged onset date, and, therefore, Gibson met Step One.  *Id*.  Next, the ALJ found that Gibson satisfied Step Two because she suffered from the severe impairments of "bilateral carpal tunnel syndrome, status post-release surgeries; and cervical degenerative disc disease."  (R. 40).  The ALJ then proceeded to the next step and found that Gibson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 41).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that:

> [T]he claimant has the following residual functional capacity ["RFC"]: She can meet the exertional demands of light work.  She occasionally can perform gross handling and feeling with the non-dominant (left) upper extremity.

(R. 41).  In light of Gibson's RFC, the ALJ determined that Gibson is "unable to perform any past relevant work."  (R. 43).  After considering Gibson's age,

education, work experience, and RFC, the ALJ determined in Step Five that "jobs exist in significant numbers in the national economy that [Gibson] can perform." (R. 44). Consequently, the ALJ found that Gibson "has not been under a disability, as defined in the Social Security Act, from December 31, 2008, through the date of this decision." (R. 45).

## V. Analysis

The court turns now to Gibson's contentions that the ALJ failed (1) to present a proper hypothetical to the vocational expert that included all her limitations and (2) to include any reach restrictions in her hypothetical or in her ultimate RFC finding. *See* doc. 9 at 4-5. The court addresses each contention in turn.

### A. Alleged failure to provide a proper hypothetical to the vocational expert to include "gross" handling

Generally, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Gibson asserts that the ALJ erred by not specifying "gross handling" limitations in the hypothetical to the vocational expert. Doc. 9 at 5. While Gibson is correct that the ALJ omitted the word "gross," the ALJ, however, posed a

hypothetical that comprised all of Gibson's impairments. Again, the ALJ determined that Gibson had the RFC to meet the demands of "light work" with occasional "gross handling and feeling with the non-dominant (left) upper extremity." (R. 41). In the hypothetical in contention, the ALJ asked the vocational expert to consider an individual who is "limited to a light range of work....and is limited to occasional...handling and feeling with the upper left extremity or the upper non-dominant extremity." (R. 80). Gibson's contention misses the mark because the hypothetical, in effect, included all of Gibson's limitations. Put differently, the omission of the word "gross" was harmless because the ALJ still effectively conveyed the intended meaning. Indeed, based on the limitations in the hypothetical, the vocational expert testified that Gibson could not perform her past relevant work since it would "require frequent bilateral handling with both upper extremities." *Id*. This response showed that the vocational expert understood Gibson's limitations included gross or frequent bilateral handling and feeling. Critically, Gibson has failed to show how the omission prejudiced her or how its inclusion would have changed the ultimate result.

     In the final analysis, the ALJ's hypothetical and the vocational expert's testimony reveal that the vocational expert considered Gibson's actual limitations

and still determined that jobs exist that Gibson can perform.  Therefore, pursuant to *Wilson*, 284 F.3d at 1227, the substantial evidence supports the vocational expert's testimony and the ALJ's finding that Gibson is not disabled.

>   B.   <u>Alleged failure to include reach restrictions in Gibson's RFC and hypothetical to the vocational expert</u>

Gibson also contends that the ALJ erred by not including "reach restrictions" in the RFC finding or in the hypothetical.  Doc. 9 at 5.  Gibson asserts that her history of pain and limitation of motion of her cervical spine warrant such a restriction.  *Id*.  The court notes that the responsibility for assessing the RFC falls on the ALJ, and that, in doing so, the ALJ considers "all the relevant evidence in [the claimant's] case record."  20 C.F.R. §§ 416.945(a)(1); 416.946(c).  Consistent with this charge, the ALJ reviewed the medical records of Gibson's treating physicians, Drs. R. Lee Nichols, Kenneth Kiser, and George Evans.  (R. 40).  As it relates to  Dr. Nichols, an orthopaedist, the ALJ noted that Dr. Nichols treated Gibson from 2007 to 2008, and that the December 2007 treatment records showed that Gibson was "delighted" with the outcome of her right carpal tunnel release and was eager for surgery on her left wrist.  (R. 40, 187).  Moreover, after receiving a repeat left carpal tunnel release surgery, Gibson returned for two follow-up visits and had no complaints other than mild residual tingling at the

radial aspect of her ring finger. (R. 185-86). However, in April 2008, Gibson returned with recurrent left carpal tunnel symptoms caused by her return to work detailing cars. (R. 184). Gibson reported that her right hand continued to perform well. *Id*. At that point, Dr. Nichols recommended that Gibson obtain an evaluation from a hand surgeon since Gibson had undergone two unsuccessful carpal tunnel releases on the left hand. *Id*.

The ALJ also reviewed the records of Dr. Kiser, a family practice physician who treated Gibson from 2008 to 2010. (R. 40). During the course of his treatment of Gibson, Dr. Kiser diagnosed Gibson with atrial fibrillation, hyperlipidemia, abnormal weight gain, constipation, insomnia, and headaches. (R. 421-445). According to the ALJ, none of these impairments constituted a "severe" impairment because each caused no more than minimal limitation on Gibson's ability to perform basic work activities. (R. 40). Gibson does not contest this finding. As it relates to Gibson's complaints about her left wrist, Dr. Kiser ordered a consult with a radiologist. The radiologist obtained an MRI of Gibson's left wrist in November 2008 and found that Gibson had "small nonspecific wrist joint effusion," "[n]o significant bone signal abnormality," and "[f]indings consistent with carpal tunnel surgery with residual scarring." (R. 388).

The ALJ also reviewed the treatment records of Dr. Evans, a family practice

physician who treated Gibson from 2005 to 2007, for back and neck pain, mood disorder, hypertension, and anxiety. (R. 40, 259-322). Dr. Evans' treatment notes indicated that Gibson's conditions were "well controlled," (R. 262, 266), and consequently his records do not help Gibson's claim. To the contrary, the records of Dr. Evans and the other physicians support the ALJ's determination that Gibson's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible because the medical record contradicted Gibson's contentions. (R. 42, 73, 78-79).

In sum, the medical record supports the ALJ's decision not to include reach restrictions in Gibson's RFC or in her hypothetical to the vocational expert. Critically, no physician ever made such a recommendation. Moreover, the ALJ adequately addressed the medical evidence regarding Gibson's pain in her left hand in the RFC which found that Gibson could perform "light work" with only occasional "gross handling and feeling with the non-dominant (left) upper extremity." (R. 41). Ultimately, Gibson has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Gibson failed to make that showing here or why the medical record warrants a reach restriction. Therefore, the substantial evidence supports the ALJ's RFC determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Gibson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 19th day of November, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE